1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7

8                          NORTHERN DISTRICT OF CALIFORNIA

9   SARAN NUTH and KEVIN O'NEILL,

10          Plaintiffs,                         No.  23-03476 WHA

11      v.                                      **ORDER REGARDING PLAINTIFFS'
                                                PARTIAL MOTION FOR SUMMARY
                                                JUDGMENT AND DEFENDANT'S**
12  NEWREZ LLC, dba SHELLPOINT                  **MOTION FOR SUMMARY
    MORTGAGE SERVICING,                         JUDGMENT**
13  TRANSUNION, LLC, EQUIFAX
    INFORMATION SERVICES LLC, and
14  EXPERIAN INFORMATION
    SOLUTIONS, INC.
15
            Defendants.
16

17                                  **INTRODUCTION**

18          In this FCRA and CCRAA action, both sides have filed cross motions for summary

19  judgment.  To the extent stated herein, plaintiffs' partial motion for summary judgment is

20  **GRANTED** and defendant Shellpoint's motion for summary judgment is **GRANTED IN PART**

21  **AND DENIED IN PART**.

22                                    **STATEMENT**

23          This case arises out of plaintiffs' former home in Santa Rosa in Sonoma County,

24  California.  In April 2011, plaintiffs obtained a mortgage loan for their home in Santa Rosa,

25  which was serviced by defendant NewRez LLC ("Shellpoint").  In March 2020, plaintiffs

26  suffered financial hardships and contacted Shellpoint for a payment accommodation.

27  Shellpoint agreed and sent plaintiffs a letter to confirm that three monthly payments from April

28  to June 2020 were deferred.  In May 2020, however, plaintiffs received a letter from Shellpoint

*United States District Court*
*Northern District of California*

1    stating that they were late on their mortgage payments and that "failure to bring your loan

2    current may result in fees and foreclosure—the loss of your home" (Compl. ¶ 18).

3        That same month, Shellpoint provided a forbearance on the loan for eighteen months,

4    from April 2020 through September 2021 (UMF 1[1]).  Shellpoint mailed plaintiffs a letter to

5    confirm that the temporary forbearance of eighteen months, which meant that they "would not

6    be penalized with a late charge or with negative credit reporting if you miss a mortgage

7    payment" (Dkt. No. 82-1 at 39).  That same letter also stated:

8    
9    > If you can afford to make payments or even partial payments, you
   > are strongly urged to do so. Your payment continues to come due
   > on a monthly basis and these payments will be due at the end of the
10   > temporary forbearance period.  If you are unable to bring your
   > mortgage loan current at the end of the forbearance period, we do
11   > have options available that can help.

(*ibid*.).  The letter also provided:

12   
13   > The terms of your mortgage remain unchanged.  As a result of not
   > making any payments during the term of the Forbearance Plan, if
   > you do not resume making timely monthly payments or make other
14   > arrangements with us you will become delinquent on your
   > mortgage and your credit score may be impacted.

15   (*ibid*.) (emphasis added).

16       Both sides agree that the loan was current prior to entering the forbearance period, and

17   plaintiffs did not make any payments during the forbearance agreement (UMF 2, 4).

18   Moreover, the loan was reported as current to credit reporting agencies during the forbearance

19   period (UMF 3).

20       On August 31, 2021, Shellpoint mailed plaintiffs another letter in which they offered a

21   trial period plan ("TPP"), for which plaintiffs would need to make payments for October,

22   November, and December 2021 (UMF 5).  Plaintiffs made all three timely payments (UMF 6).

23       Shellpoint reported the loan as thirty-days past due in October 2021 and sixty-days past

24   due in November 2021 (UMF 7).  Shellpoint reported the loan as current in December 2021,

25   and all subsequent months until the loan was paid off in July 2022 (UMF 9).  Plaintiffs

26   

27   

28   ---
[1] Both sides have filed a jointly submitted list of stipulated, undisputed material facts ("UMF"). The full list can be found on Dkt. No. 79-2.

United States District Court
Northern District of California

1    disputed the credit reporting of October 2021 and November 2021 with Shellpoint and three

2    other defendants: Equifax, Experian, and Trans Union (UMF 8).  Plaintiffs allege that

3    Shellpoint refused to correct its reporting (Dkt. No. 79 at 8).

4         Plaintiffs filed suit in July 2023, against Shellpoint, Equifax Information Services, LLC,

5    Experian Information Solutions, Inc., and Trans Union, LLC, alleging violations of the

6    CARES Act, CCRAA, FCRA, and the Rosenthal Act.  Plaintiffs have now filed a motion for

7    partial summary judgment.  Likewise, Shellpoint has filed a cross motion for summary

8    judgment.  Since the two instant motions were filed, Equifax, Experian, and Trans Union were

9    dismissed from this action (Dkt. Nos. 72, 86, 88).

10        This order follows full briefing and oral argument.

11                                    **ANALYSIS**

12        Summary judgment is proper when "there is no genuine dispute as to any material fact

13   and the movant is entitled to judgment as a matter of law."  FRCP 56(a).  A dispute is

14   "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-

15   moving party, and "material" only if the fact may affect the outcome of the case.  *Anderson v.*

16   *Liberty Lobby, Inc*., 477 U.S. 242, 248–249 (1986).  Unsupported conjecture or conclusory

17   statements, however, cannot defeat summary judgment.  *Surrell v. Cal. Water Serv. Co*., 518

18   F.3d 1097, 1103 (9th Cir. 2008).

19        During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and

20   Economic Security ("CARES Act") to address the economic hardships faced by many

21   Americans.  The CARES Act is integrated into FCRA and requires furnishers to report

22   borrowers who receive accommodation as "current" if their loan was not delinquent before the

23   accommodation began.  15 U.S.C. § 1681s-2(a)(1)(F).  In doing so, the CARES Act aims to

24   protect consumer's credit.  *See* CARES Act Legislative History, 166 Cong. Rec. E339-01

25   (March 27, 2020) ("It also prohibits forced collections such as garnishment of wages, tax

26   refunds, and Social Security benefits, *and negative credit reporting during this time period*.")

27   (emphasis added).

28

United States District Court
Northern District of California

1          Shortly thereafter, the Consumer Financial Protection Bureau ("CFPB") published

2    directives to aid furnishers and credit reporting agencies in complying with the CARES Act.

3    *Consumer Reporting FAQs Related to the CARES Act and COVID-19 Pandemic*,

4    CONSUMERFINANCE.GOV, https://files.consumerfinance.gov/f/documents/cfpb_fcra_consumer-

5    reporting-faqs-covid-19_2020-06.pdf (last visited November 4, 2024).

6          This action involves a furnisher, Shellpoint, assisting plaintiffs on their loan by first

7    providing a forbearance for eighteen months (for which monthly payments were not required)

8    and subsequently offering them a trial period plan ("TPP") for which plaintiffs were required

9    to make a reduced payment each month.   The essence of this order is to clarify how a furnisher

10   must report the status of an account when a borrower follows the terms of one accommodation

11   and then makes payments according to the terms of a second, subsequent accommodation.  To

12   be clear, this order is issued in the absence of any binding authority from our court of appeals,

13   and very little discussion on the subject in this district.

14         Although both sides stipulate to several facts, both sides essentially differ as to (1)

15   whether plaintiffs were delinquent on the loan when they entered the TPP and (2) whether

16   Shellpoint should have reported plaintiffs' loan as past due in October 2021 and November

17   2021.  Plaintiffs seek a partial summary judgment finding that Shellpoint's reporting plaintiffs'

18   loan as past due in October 2021 and November 2021 is "inaccurate as a matter of law," under

19   the CARES Act (Dkt. No. 79 at 8).  On the other hand, Shellpoint argues that while the loan

20   was current before the forbearance, plaintiffs were delinquent at the end of the eighteen-month

21   forbearance and were thus delinquent going into the TPP (Dkt. No. 81 at 8-9).  Moreover,

22   Shellpoint moves for summary judgment on all claims.

23         The CARES Act states that if a furnisher makes an accommodation with respect to one or

24   more payments on a credit obligation, and the consumer "is not required to make [one] or more

25   payments pursuant to the accommodation, the furnisher shall report the credit obligation or

26   account as current," unless the loan was delinquent before the accommodation.  15 U.S.C. §

27   1681s-2(a)(1)(F)(ii).  What forms the crux of the instant action, however, is what the CARES

28

United States District Court
Northern District of California

1      Act requires in terms of reporting, when a furnisher, such as Shellpoint, grants a borrower two

2      consecutive accommodations.

3           This order disagrees with Shellpoint that plaintiffs were delinquent on the loan during

4      October 2021 and November 2021.  Further, this order disagrees with Shellpoint's construction

5      of the CARES Act, which would essentially penalize plaintiffs for complying with the terms of

6      an accommodation offered by Shellpoint.

7           This order will provide a brief overview of Shellpoint's argument that plaintiffs were

8      delinquent on their loan prior to entering the TPP and why the CARES Act permitted them to

9      report plaintiffs as past due.  *First*, Shellpoint argues that plaintiffs' loan had accrued

10     delinquency during the eighteen-month forbearance because payments became due each

11     month, and plaintiffs did not make any monthly payments during those forborne months.

12     *Second*, that at the end of the forbearance period, plaintiffs' loan was "delinquent" on the

13     balance of the forborne payments and were therefore delinquent entering the TPP.  *Third*, the

14     TPP did not modify the terms of plaintiffs' loan.  *Fourth*, because plaintiffs' TPP payments

15     were less than the monthly amount contractually required under the loan, plaintiffs were

16     delinquent in the months of October 2021 and November 2021.  *Fifth*, because plaintiffs did

17     not make their contractual mortgage payments in October and November 2021, Shellpoint was

18     permitted under CARES Act to report them as past due.  To support its interpretation,

19     Shellpoint cites to the following provision of the CARES Act: "if the credit obligation or

20     account was delinquent before the accommodation" the furnisher must "maintain the

21     delinquent status during the period in which the accommodation is in effect" or "if the

22     consumer brings the credit accommodation or account current during the period described in

23     item (aa), report the credit obligation or account as current."  15 U.S.C. § 1681s-

24     2(a)(1)(F)(ii)(II).

25          This order is not convinced by Shellpoint's construction of the CARES Act which would

26     essentially penalize plaintiffs for following the terms of two consecutive accommodations

27     offered by Shellpoint.  It is inconceivable that Congress intended for hardworking Americans

28

United States District Court
Northern District of California

5

1   to be punished by following the instructions of a mortgage-servicer.  Rather, a more reasonable

2   interpretation depends on the definition of "delinquent status."

3        In interpreting the definition of "delinquent status" this order "first looks to the language

4   of the statute, giving effect to the word's plain meaning; '[i]f the language is unambiguous, the

5   plain meaning controls.'"  *Gonzalez v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 650 (9th

6   Cir. 2016) (quoting *Voices of the Wetlands v. State Water Res. Control Bd.*, 52 Cal. 4th 499,

7   519 (2011)).  "If the language is clear, courts must generally follow its plain meaning unless a

8   literal interpretation would result in absurd consequences the Legislature did not intend.  If the

9   statutory language permits more than one reasonable interpretation, courts may consider other

10   aids, such as the statute's purpose, legislative history, and public policy."  *Coalition of*

11   *Concerned Communities, Inc., v. City of Los Angeles*, 34 Cal. 4th 733 737 (2004).  As stated

12   above, Congress enacted the CARES Act in order to protect Americans from negative credit

13   reporting.

14        Therefore, a more reasonable interpretation of "delinquent status" is the *reporting status*

15   of an account.  This would mean that a furnisher must maintain the reporting status of account

16   going into the accommodation.  15. U.S.C. § 1681s-2(a)(1)(F)(ii)(II)(aa).  So, if the account

17   was *reported* as current prior to an accommodation, then the furnisher must continue to *report*

18   the account as current during the accommodation.  Here, since plaintiffs' account was reported

19   as current prior to the second accommodation (i.e. the TPP), Shellpoint should have maintained

20   the reporting status as current, as plaintiffs went into the TPP.

21        Even if this order were to accept Shellpoint's interpretation of the CARES Act,

22   Shellpoint is still incorrect as a matter of law that that plaintiffs were delinquent on the loan in

23   October and November 2021, because plaintiffs selected an accommodation provided by

24   Shellpoint according to the terms of its forbearance letter.  Although payments became due

25   each month during the forbearance period, Shellpoint stated that they would only become

26   delinquent if they "do not resume making timely monthly payments *or make other*

27   *arrangements with us*" (Dkt. 82-1 at 39) (emphasis added).  Plaintiffs argue that by agreeing to

28   and complying with the terms of the TPP, they had agreed to another "arrangement" in order to

United States District Court
Northern District of California

1    deal with the forborne balance (Dkt. No. 79). Therefore, according to plaintiffs, Shellpoint's

2    own terms determined that they could not be delinquent. This order agrees.

3         This order finds that plaintiffs addressed the balance left after the forbearance period by

4    making timely payments pursuant to the TPP—all in accordance with Shellpoint's own terms.

5    On August 31, 2021, plaintiffs received a letter entitled "Streamlined Modification Solicitation

6    Letter" which contained vexing language such as "your time to act is running out," and "time

7    is of the essence." The same letter stated that in order to comply with the TPP, plaintiffs had to

8    make a payment of $2,191.12 on the first days of October, November, and December 2021.

9    Both sides agree that plaintiffs made each payment pursuant to the TPP.

10        In fact, Shellpoint acknowledged that plaintiffs had successfully completed the TPP

11   because Shellpoint permanently modified the terms of plaintiffs' loan at the end of December

12   2021. By 2022, plaintiffs paid off the rest of their mortgage. Shellpoint now argues that it was

13   justified in reporting plaintiffs as past due in October 2021 and November 2021 because

14   plaintiffs' payments pursuant to the TPP were less than what was contractually due under the

15   terms of their loan. This order finds Shellpoint's argument unpersuasive and further finds its

16   own terms confusing at best.

17        The only reasonable way to construe the forbearance letter and the TPP letter, is to find

18   that the TPP is one of the "arrangements" offered by Shellpoint at the end of the forbearance

19   period. By making timely payments pursuant to the TPP, plaintiffs had complied with the

20   terms of an "arrangement." Therefore, according to Shellpoint's own terms, this order finds

21   that plaintiffs could not have been delinquent because they had "made an arrangement" and

22   complied with the terms of the TPP.

23        Further, at no point in the TPP letter did Shellpoint state that by making payments

24   pursuant to the TPP, they would receive negative credit reporting. The only language which

25   comes close to a warning is "[w]e will continue to report the delinquency status of your loan to

26   credit reporting agencies as well as your entry into the Trial Period Plan in accordance with the

27   requirements of the Federal Credit Reporting Act." This language, however, does not convey

28   to the reader that, despite following Shellpoint's accommodation, payments pursuant to the

1    TPP will result in reporting the loan as past due.  Even more troubling, the TPP letter contained

2    the following confusing language: "your current loan documents remain in effect; however,

3    you may make the trial period payment instead of the payment required under your loan

4    documents."  This order is concerned by the deceptive language of Shellpoint's letters, which

5    appears to aid plaintiffs but vaguely threatens to punish them as well.

6        In effect, Shellpoint attempts to argue that plaintiffs should have simply made the

7    contractually owed, monthly payment in order to escape negative reporting.  At no stage,

8    however, did Shellpoint transparently convey this to plaintiffs.  Most of all, the difference

9    between the contractually required payments and the TPP payments was about $120.

10   Plaintiffs' misfortune could have been prevented if they had simply paid roughly an additional

11   $240—and they probably would have done so, were it not for Shellpoint's lack of clarity.

12       Credit is wrecked by misinformation propagated by credit reporting agencies.  Upon

13   inquiring and investigating a borrower's account, the credit reporting agencies almost

14   invariably point fingers at furnishers who supply information on a massive and automated

15   basis, the result of which ends up ruining the credit of good, hardworking Americans.  To be

16   clear, plaintiffs Kevin O'Neill and Saran Nuth timely made every installment payment when

17   asked by Shellpoint and yet were still reported as "delinquent" by the loan services to three

18   national credit reporting agencies.  It is true that they would still need to be liable for future

19   installment, as they fell due, but the irrefutable fact is that they timely made every installment

20   payment as due.  In reporting them as delinquent, Shellpoint violated the CARES Act and their

21   own agreement.  For these reasons, this order finds that Shellpoint's reporting was inaccurate

22   as a matter of law and plaintiffs' partial motion for summary judgment is **GRANTED**.

23       This order will now briefly address Shellpoint's motion for summary judgment regarding

24   plaintiffs' Rosenthal, FCRA and CCRAA claims.  Plaintiffs allege that Shellpoint violated the

25   Rosenthal Act by making misleading representations to collect payments on the loan that

26   plaintiffs did not owe.  Shellpoint argues that this claim is barred by a one-year statute of

27   limitations.  This order agrees.  Given that the loan was reported as past due only in October

28   and November 2021, and this action was filed in July 2023, plaintiffs' Rosenthal claim is time-

United States District Court
Northern District of California

8

barred.  Therefore, Shellpoint's motion for summary judgment is **GRANTED**.   However, this order finds that Shellpoint has not demonstrated that summary judgment should be granted in its favor for plaintiffs' FCRA or CCRAA claims.  Given that both claims turn on the reasonableness of a credit reporting investigation, these two claims should be left to a jury. *Gross v. CitiMortgage, Inc*., 33 F.4th 1246, 1252-1253 (9th Cir. 2022).  As such, Shellpoint's motion for summary judgment as to plaintiffs' FCRA and CCRAA claim is **DENIED**.

### CONCLUSION

For the aforementioned reasons, plaintiffs' partial motion for summary judgment is **GRANTED** and Shellpoint's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Dated:  November 4, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

9